UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REX R. ROBINSON,

    Petitioner,       Civil No. 06-15381
               Criminal No. 99-20011
v.              Honorable David M. Lawson

UNITED STATES OF AMERICA,

    Respondent.
_____/

## OPINION AND ORDER GRANTING MOTION TO VACATE SENTENCE

   The petitioner, Rex Robinson, was convicted by a jury of one count of conspiracy to violate the Controlled Substances Act and one count of violating the Travel Act and sentenced to 121 months in prison. He filed a post-trial motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, but his attorney never filed a motion for new trial under Rule 33. The Court harbored grave doubt about the propriety of Robinson's conviction, but applying the standard that the law requires for Rule 29 motions, the Court reluctantly denied it. The conviction was affirmed on appeal. The petitioner now has filed a motion under 28 U.S.C. § 2255 to vacate his sentence, alleging ineffective assistance of counsel. After careful and extended consideration, the Court now finds that trial counsel's performance fell below the standard required by the Sixth Amendment when he failed to move for a new trial under Rule 33, and the deficient performance resulted in prejudice to the petitioner because such a motion would have been meritorious, and the Court would have granted it. Therefore, for the reasons explained more fully below, the Court will grant the motion to vacate sentence.

I. Facts and proceedings

The petitioner, Rex Robinson, was indicted with his two brothers (Marcus and Chad Robinson) and several others on February 10, 1999, and a superseding indictment was filed on March 28, 2001, charging the defendants with conspiracy to manufacture 1,000 or more marijuana plants or to distribute or possess 1,000 or more kilograms of marijuana in Michigan and elsewhere between 1991 and June 1998, plus various counts of traveling in interstate commerce with intent to promote, manage, and carry on an unlawful activity, that is, a business enterprise involving marijuana. The underlying facts of the case, as they were adduced at trial, were set forth in the Court's opinion and order denying the petitioner's motion for judgment of acquittal. Many of those facts, as pertinent to the present motion, are set forth again here.

In the fall of 1996, a police officer investigating a complaint that a horse had broken free of its corral in rural Sanilac County discovered the remnants of a sophisticated operation for growing, harvesting, and processing large amounts of marijuana. The farm on which this operation was based was titled in the name of co-defendant Marcus Robinson, Rex's brother. Throughout the trial, Marcus steadfastly disavowed any knowledge of or connection with the marijuana operation, and insisted that he had leased the property to a person named John Hunt, whose identity or existence actually was never established.

The trial evidence established that Rex Robinson came to Michigan in 1995 and looked at the farm on Argyle Road in Sanilac, Michigan before his brother purchased it. This farm later became the site of a marijuana manufacturing operation in 1995 and 1996. After the cash purchase of this farm by Marcus Robinson, James Austin Mattingly came to Michigan in 1995 along with Dennis Miles, Ralph Kough, and Greg Edelen. The group examined the Argyle Road property and subsequently set up a marijuana production site. During this time, each member of the group used

aliases.  The farm was cleaned up, a secret space was created to cultivate and dry marijuana, a marijuana crop was planted in between rows of corn, and a large crop was harvested.

The original indictment in this case was returned on February 10, 1999 (unsealed on February 25, 1999) and was superseded three times.  The final superseding indictment charged six people in count one, including Rex, Chad and Marcus Robinson, with a drug conspiracy in violation of 21 U.S.C. § 846.  The alleged purpose of the conspiracy was to manufacture and distribute one thousand or more marijuana plants and to distribute one thousand or more kilograms of marijuana.  The indictment alleged that Rex Robinson and others traveled in interstate commerce to promote "the marijuana growing and processing operation in the Eastern District of Michigan."  The indictment also alleged that Rex and Marcus Robinson "attempted to conceal activities previously conducted in connection with the purchase and attempted purchase of real estate in Sanilac County, Michigan."  Also charged in the conspiracy count were Francis Darrell Hayden, Dennis Keith Miles, James Michael Everett, Ralph Michael Kough, Barbara L. Kough, and James Austin Mattingly.  The Koughs and Mr. Mattingly entered into Rule 11 plea agreements prior to trial.  Ralph Kough and Mattingly testified at trial for the government.

Count six charged Marcus and Rex Robinson with a Travel Act violation contrary to 18 U.S.C. § 1952.  The indictment alleged that on or about January 18, 1997, Marcus and Rex Robinson traveled between Indiana and Sanilac County, Michigan with the intent to promote a business enterprise involving marijuana by attempting to conceal the true purpose of the "purchase and attempted purchase of real estate in Sanilac County."

The evidence at trial established without much doubt that Hayden, Miles, Everett, and Mattingly participated in the manufacturing operation at the Argyle Road farm in 1995 and 1996.

The connection of the Robinson brothers to the Sanilac County activities was less direct.  As to Rex
Robinson, evidence was presented that he assisted one of his brothers, Chad, in a marijuana growing
operation in Indiana from 1991 until 1993.  Frances Robinson, Chad's ex-wife, testified that Chad
purchased a farm in Sullivan, Indiana but titled it in Rex's name in 1991.  She stated that the farm
was purchased as a site for marijuana manufacturing, and that a man named Kerry was supposed to
run the farm for Rex and Chad.  Kerry did not do a very good job, however, and Rex took over
production on the farm in 1992.  Frances explained that this was a family operation, and that
Marcus, the older brother, owned a car lot in Indiana called R Motors where the marijuana was
ultimately sold.  R Motors also transported drivers and marijuana across the state lines to Kentucky
at certain times.

During this time period, Frances admitted, she assisted in the marijuana operation by helping
harvest crops.  She also explained that she saw marijuana plants growing at Rex's home, overheard
conversations between her husband and Rex regarding their plans for the Sullivan farm, and knew
that the two brothers went "coon hunting" to look for other locations to grow their crops.  Her
knowledge of these activities spanned from 1991 until 1994, when she divorced Chad.

The transcript recites testimony discussing a 30-acre farm in Sullivan, Indiana, Trial Tr. vol.
VI, 25, May 23, 2001, and a house in Selvin, Indiana, *id*. at 27.  However, the transcript reflects a
number of questions and answers about a *farm* in *Selvin*.  *Id.* at 32, 33, 35, 43.  This discrepancy
likely reflects mis-speaking on the part of the trial participants or error on the part of the court
reporter.  The evidence at trial, viewed in the light most favorable to the government, showed that
Rex engaged in marijuana growing activities from 1991 to 1994.  Frances Robinson testified that
the land Chad bought in Sullivan, Indiana to grow marijuana was put in Rex's name.  Trial Tr. vol.

-4-

VI, 21, May 23, 2001.  Frances also testified that Rex grew marijuana in the closet of a house

trailer's bedroom in 1991.  *Id.* at 31.  Later in 1991, Rex and his wife moved into a house in Selvin,

Indiana.  During this time, marijuana continued to be grown at the farm.  *Id.* at 32.  According to

Frances Robinson, in 1992 and 1993, Rex and Chad made plans for Rex to move to the farm to help

with the marijuana growing operations.  *Id.* at 33-34.  However, Frances never testified that Rex

actually did move to the farm.  The testimony establishes only that Rex and Chad talked about it.

This gap, once again, could be due to errors in the transcript regarding Selvin and Sullivan.  For

instance, Frances answered "yes" when asked, "Was there a time period then when Rex Robinson

and his wife took up residence at that property in Selvin?"  Trial Tr. vol. VI, 31, May 23, 2001.  If

this question was intended to ask about "Sullivan, Indiana," then there was testimony that Rex

moved to the Sullivan farm.

       Frances testified that, as far as she knew, marijuana was only being grown at the farm in

1992, but she never saw that marijuana.  *Id.* at 35-36.  She then testified, however, that marijuana

was being grown in a bedroom of the Selvin house in 1992, where Rex may have been living.  *Id.*

at 36.  Again, Frances never saw the plants but somehow knew they were there.  *Ibid.*  Frances

admitted that she never saw any marijuana growing activity in 1992.  *Id.* at 38.  Frances also

"hear[d] conversations between Rex and Chad regarding growing marijuana in a room in Rex

Robinson's residence," but she had no idea how many plants were involved.  *Id.* at 46-47.  It appears

that this occurred sometime in 1993.  *Id.* at 47.  Frances said she saw marijuana plants in a basement

room at Rex Robinson's home in 1994.  *Id.* at 48.  She did not testify to the number of plants she

saw.  Regarding amounts, Frances testified that Chad grew at least 200 plants in 1993 in a room in

the basement of their house.  *Id.* at 38-41.  However, she never testified that Rex was involved in that activity.

The only trial testimony indicating that Rex Robinson ever went to the Argyle Road farm in Michigan came from Sanilac County deputy sheriff Mark Ruggles.  Trial Tr. vol. VIII, 65-66, May 30, 2001.  Ruggles testified that Rex came to Michigan in 1997 to be interviewed.  At that interview, Rex told Ruggles that he had visited the farm in February 1995 with Marcus Robinson. *Id.* at 67.  The government believes Rex lied to Deputy Ruggles since his work records do not show absences in February 1995, although they do show absences during the week ending January 29, 1995.  It seems likely that this discrepancy of a week was a reasonable mistake and not an intentional prevarication.  The thousands of plants were grown at the Argyle Road farm in 1995 and 1996 during the growing seasons.

Rex Robinson contended that this evidence was insufficient to support his conviction because the principal witness against him, his brother's ex-wife Frances Robinson, was a liar.  After observing the witness's demeanor on the witness stand and listening to her testimony on direct and cross-examination, the Court finds merit to the defendant's contention.  In addition, Candida Tremper, a person with no ties to the defendants, testified that she heard Frances Robinson brag to friends at a Wal-Mart store in Indiana that she had lied at trial to get even with the Robinson brothers.  Tremper testified:

> A.  The first thing I heard her say was that she had been to Michigan, and that she had told enough lies to get even with Chad and his brothers and send them to the big house.
> Q.  Put them in the big house?
> A.  Um humm.
> Q.  And what else did you hear her say?
> A.  Well then she said that Mark Robinson's lawyer wouldn't be so cute after he got about 50 phone calls in the middle of the night.

Trial Tr. vol. XII, 184, June 11, 2001.  Ms. Tremper further testified that Frances Robinson's reputation for truth and veracity was "[n]ot truthful."  *Id*. at 186.

Although the evidence specifically relating to Rex was not verified through another witness, certain elements of Frances's testimony were supported in a general way by other witnesses.  For example, government witness Dennis Steger, a Saginaw County deputy sheriff, verified that legitimate businesses often exist to conceal the profits of drug operations.  Additionally, the testimony of some of the government witnesses was consistent with much of Frances's testimony relating to the methods for manufacturing and cultivating a marijuana crop.  Evidence was also presented to suggest that R Motors did not do much business, but that Marcus was earning a lot of money – indeed, enough to purchase an $89,000 farm in a cash deal even though he was earning less than $40,000 per year in his position with ALCOA.

The testimony of another government witness, Deputy Ruggles, established that Rex assisted in the purchase of what became the location of the marijuana growing operation in Michigan on Argyle Road for Marcus in 1995.  Ruggles also said that he executed a search warrant on the Argyle Road property in late 1996, and he met Rex and Marcus Robinson in Michigan on January 18, 1997.  He testified that the three of them went to the Argyle Road property, where Rex informed him that many things on the farm looked different than they did when he first saw the place back in February of 1995.

Coconspirator-turned-government-informant Mattingly testified regarding the identification of the financiers of the operation:

> Q.  Did he say who it was that had purchased the farm and who it was that was financing the [drug] operation?

-7-

A. He had mentioned something about Robinsons, that's who he told me. He didn't specifically name a specific name, but he said Robinsons.

Q. Did he indicate anything about where the Robinsons were from?

A. No, he didn't.

Q. Did somebody else at some other time?

A. Yeah, Dennis Miles had talked to neighbors, one of the neighbors was talking and they mentioned something about who purchased the farm, a Mr. Bullock.

Trial Tr. vol. V, 83, May 22, 2001.

In addition, a scanner along with codes for the local police and conservation authorities as well as papers that appeared to be a ledger with names and dollar figures with calculations in excess of $30,000 were seized from Rex Robinson's Indiana residence during a search on May 19, 1998. However, Lisa Robinson, Rex Robinson's ex-wife, testified as a defense witness and identified as hers a Bearcat police scanner, Exhibit 131, which the police took in the May 1998 police raid. She also alleged that Exhibit 132, a list of scanner codes including one signaling a drug bust, was hers. She claimed that she listened to police broadcasts as a hobby. Finally, Gloria Robinson, another ex-wife of Rex, identified Exhibit 128, a piece of paper referring to "Gord, Neff, Whitehead, and Thomas," and which had the figure of $15,150 written on it, as describing her divorce settlement. She clarified that her nickname was Gord, Neff was Rex's attorney, Whitehead was her attorney, and Thomas was the mediator.

The trial began on May 15, 2001 and the case went to the jury around noon on June 14, 2001. Despite a month-long trial, a large volume of testimony and exhibits, and the need to consider the case against each of six defendants, the jury deliberated less than four hours and found each of the defendants guilty as charged.

-8-

During trial, the petitioner moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court took the motion under advisement, and on August 31, 2001 the petitioner filed a brief in support of the motion. In his motion, the petitioner argued that the evidence presented at trial was not sufficient to find the petitioner guilty of participating in the conspiracy. The petitioner's attorney never filed a motion for a new trial, nor did he challenge the sufficiency of the evidence regarding the quantity of marijuana the jury found he conspired to manufacture.

On August 30, 2004, the Court denied the motion in a written opinion. On November 9, 2004, the petitioner was sentenced to 121 months on count one and 60 months on count six, in accordance with the then-mandatory Sentencing Guidelines. Because of the quantity of marijuana alleged, the conviction on court one carried a statutory mandatory minimum sentence of 120 months.

On November 15, 2004, the petitioner simultaneously filed a notice of appeal and a motion to vacate his sentence. The motion to vacate was eventually denied as premature. On appeal, the petitioner argued that there was not sufficient evidence at trial to permit a reasonable jury to find every element of the charged offenses beyond a reasonable doubt. On January 4, 2006, the Sixth Circuit affirmed the convictions. *United States v. Robinson*, 161 F. App'x 541 (6th Cir. January 4, 2006) (unpublished).

On December 4, 2006, the petitioner filed a motion to vacate or set aside his sentence arguing that his attorney was ineffective for failing to (1) file a Rule 33 motion for a new trial and (2) challenge the jury's finding that the petitioner conspired to possess or distribute more than 1000 plants or kilograms of marijuana as against the great weight of the evidence. The government filed a timely response arguing that the petitioner's claims have no merit, and the petitioner has filed a reply brief.

Along with his motion to vacate, the petitioner has submitted an affidavit from his trial attorney, Robert Canada. Mr. Canada swears that he was not aware of Rule 33 during his representation of the petitioner:

> 1. I am an attorney and I represented Rex Robinson at trial in the case of USA vs. Rex Robinson, Eastern District of Michigan #99-20011-3 BC.
> 2. On June 14, 2001 a jury found Defendant Rex Robinson guilty of violations of 18 USC § 1952 and 21 USC § 846.
> 3. During trial I made an oral motion for a directed verdict of acquittal and I supplemented it with a written submission. Among other things, I argued in connection with the Rule 29 motion that witness Frances Robinson's testimony was not credible.
> 4. At the time of the verdict and during the week which followed I was not familiar with F.R. Crim. Pro. 33 which allows a judge to both consider the credibility of witnesses and the weight of the evidence to insure that the verdict does not constitute a miscarriage of justice.
> 5. Had I been aware of F.R. Crim. Pro. 33 and the fact that it empowers a trial judge to consider whether a new trial should be ordered on the basis that the verdict was against the great weight of the evidence, I would have filed such a motion within seven (7) days of the verdict.

Mot. to Vacate, Canada Aff. [dkt # 564]. The government states this affidavit should not be construed as indicating that Mr. Canada was unaware of the existence of new trial motions in general because new trial motions were mentioned twice by the Court on the last day of trial. The record bears out the government's contention, although it is apparent that those comments by the Court were directed to the attorneys of other defendants in the case while discussing detaining those defendants pending sentencing. A new trial was mentioned in the context of the defendants' burden of establishing a substantial likelihood that a motion for acquittal or new trial will be granted. The Court stated to Thomas Loeb, who represented Marcus Robinson, the following:

> Well the ground – frankly, I think I can tell you that the heart of the issue in the case is whether or not there's a substantial likelihood that a motion for acquittal or judgment – I'm sorry, motion for acquittal or new trial will be granted.

Trial Tr. vol. XIV, 74, June 13, 2001. Mr. Loeb indicated he "would be making such a motion." *Ibid.* A similar comment was made by the Court to Russell Perry, who was representing Dennis Miles. *Id.* at 75-76. Although Mr. Canada was in the courtroom at the time, the Court was directing its comments to other attorneys who represented other defendants.

## II. Discussion

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

The petitioner asserts that his attorney provided ineffective assistance in violation of the Sixth Amendment. A claimed violation of the right to effective assistance of counsel states a constitutional violation cognizable under section 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Counsel . . . has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's

-11-

performance must be highly deferential." *Id*. at 689.  The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

### A.  Failure to move for a new trial

The petitioner alleges first that his attorney's performance was constitutionally deficient for failing to file a motion for a new trial under Federal Rule of Criminal Procedure 33.  The petitioner contends that the Rule 29 motion filed by his attorney "was doomed to failure" because the Court was required to view the evidence in the light most favorable to the government's position.  He contrasts that with a Rule 33 motion, which permits a court to consider the credibility of witnesses, including Frances Robinson.  The petitioner's trial attorney maintained that he was not familiar with Rule 33.  The petitioner contends that trial counsel's failure to file a Rule 33 motion was deficient performance, and he was prejudiced since the Court expressed doubt about the weight of the evidence and Frances's credibility.

-12-

The government contends that failing to make a Rule 33 motion is not inconsistent with objective standards of reasonableness.  Rather, the government relegates the decision to forego filing a motion for new trial to trial counsel's strategic choice, observing generally that Rule 29 motions are made in almost every case, and Rule 33 motions are rarely made.  The government attributes the rarity of Rule 33 motions to its view that such motions, when based on the weight of the evidence, are not favored and are granted only in exceptional cases, which this case is not.

### i. Performance

As a general rule, trial counsel's strategic decisions on how the trial is to be conducted are afforded great deference. As the Supreme Court explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotes and citations omitted).  "[A] lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented."  *Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir. 2002) (citing *Bell v. Cone*, 535 U.S. 685 (2002)).  It is equally true that "errors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

-13-

However, "strategic" choices that have no hope of succeeding, are made without adequate investigation or preparation, or actually imperil the defendant's case cannot be considered "sound." For instance, in *Wiggins*, 539 U.S. at 527-28, a death penalty case, the Supreme Court held that the state court of appeals unreasonably applied *Strickland*'s governing principles in rejecting the petitioner's ineffective assistance claim because the state court of appeals' conclusion that counsel's performance was within professional norms was objectively unreasonable. Counsel did not present evidence at the penalty phase on the petitioner's personal background – a valid strategic choice under some circumstances – but counsel had failed to make a reasonable investigation into the petitioner's social history. *Ibid.* (noting that under *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation" (citation and internal quotation marks omitted)). This failure reasonably to investigate, in turn, rendered the state court's deference to counsel's strategic decision not to present mitigating evidence of the petitioner's social history objectively unreasonable as well. *Ibid.* (stating that "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible"). A "decision . . . cannot be according the normal deference to strategic choices [where] it was uninformed." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006).

Other "strategic" choices by counsel, such as the failure to object to obviously tainted and inadmissible evidence, *Ege v. Yukins*, 485 F.3d 364, 378-79 (6th Cir. 2007), and the failure to cross-examine a key prosecution witness, *Higgins v. Renico*, 362 F. Supp. 2d 904, 916-17 (E.D. Mich. 2005), have been found to be so unsound as to negate the finding that counsel's performance tracked "prevailing professional norms." *Wiggins*, 539 U.S. at 521.

-14-

Moreover, acts or failures that do not constitute strategic decisions are not afforded deference. "Only choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citation omitted). An obviously defective choice is "not a reasonable strategic decision entitled to deference." *Moss v. Hoffbauer*, 286 F.3d 851, 865 (6th Cir. 2002) (finding that defense counsel's reliance on the cross-examination of an eyewitness by a co-defendant unreasonable when the two defendants' interests were not aligned). As the Seventh Circuit has put it:

> [I]f as in this case there is only one argument that could be made on the defendant's behalf, and it is not frivolous, the lawyer may have a professional obligation to make it. *Keys v. Duckworth*, 761 F.2d 390, 392 (7th Cir. 1985) (per curiam); *cf. Fortenberry v. Haley*, 297 F.3d 1213, 1226-27 (11th Cir. 2002) (per curiam); *Tejeda v. Dubois*, 142 F.3d 18, 25 (1st Cir. 1998). It is not suggested that Rezin's lawyer had a tactical reason not to make the argument that we are about to examine; he could not have, since he had no other basis for knocking five years off his client's sentence. "The spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense." *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 805 (7th Cir. 1987). There was nothing to lose and something to gain, though only in a probabilistic sense, from making the argument.

*United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003). A decision based on a misunderstanding of the law is not a strategic decision. *Dando v. Yukins*, 461 F.3d 791, 799 (6th Cir. 2006) ("The evidence in this case suggests that the attorney's decision was not an exercise in professional judgment because it reflected a misunderstanding of the law regarding the availability of a mental health expert."); *see also United States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996) ("Counsel's errors with the jury instructions were not a strategic decision to forego one defense in favor of another. They were the result of a misunderstanding of the law.") (citing *Martinez-Macias v. Collins*, 810 F. Supp. 782, 786 (W.D. Tex. 1991)); *Cox v. Donnelly*, 432 F.3d 388, 390 (2d Cir. 2005) (finding deficient performance where trial attorney admitted that "he did not challenge the

trial court's intent instructions because he did not then know that they were illegal under state and federal law . . . [and] had he been aware of the unconstitutional nature of the instruction, he would have lodged an objection to it"); *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003) ("[A] tactical or strategic decision is unreasonable if it is based on a failure to understand the law."); *United States v. Streater*, 70 F.3d 1314, 1321 (D.C. Cir. 1995) ("While this court remains unwilling to second-guess 'reasonable strategic or tactical judgments,' [trial counsel]'s erroneous legal advice to Streater on a critical point cannot be excused as a strategic or tactical judgment, but could have sprung only from a misunderstanding of the law." (internal citation omitted)).

In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), a criminal defendant's attorney failed to file a motion to suppress evidence challenging a search and seizure within the time allowed under state law. The evidence was admitted at trial. The Supreme Court held that the defendant's constitutional right to effective assistance of counsel was violated by his attorney's failure to move to suppress the evidence. The attorney in that case was not aware of the search until the first day of trial because he failed to request any discovery from the state. That failure "was not based on 'strategy,' but on counsel's mistaken beliefs that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense." *Id.* at 385. The Court found that the attorney's failures "betray a startling ignorance of the law." *Ibid.*

In *House v. Balkcom*, 725 F.2d 608 (11th Cir. 1984), the Eleventh Circuit found a defendant's attorneys ineffective for committing a variety of errors, including a failure to file a motion for a new trial based on newly discovered evidence. The court stated:

> The Atkinses failed to file a motion for a new trial based on evidence submitted to them by House's neighbors. The district court, although not finding counsel ineffective, acknowledged the curiousness of the situation:

> Both Schumacher and Mrs. Atkins have testified that they did not pursue the matter because they ultimately decided the Ramsey-Patterson testimony could have been discovered in the exercise of due diligence prior to trial. However, that explanation does not make sense.

*House v. Balkcom*, 562 F. Supp. at 1132. While it is not the function of this court to second-guess the decisions of counsel as to whether or not counsel should file motions in particular cases, the explanation given here for not doing so has no realistic basis. Bobby Patterson approached the Atkinses because of what she had heard at the recently concluded trial. She could not have come forward prior to trial. Failure to file a motion for new trial based on newly discovered evidence, standing alone, does not automatically constitute ineffective counsel. In the totality of the other failures of the Atkinses, it adds to the already ripe impression that no real representation occurred.

*Id.* at 619.

The explanation given in the present case for trial counsel's failure to move for a new trial under Rule 33 is trial counsel's ignorance of the law. He avers that he did not know a new trial could be granted on the ground that the verdict was against the great weight of the evidence. The government questions Mr. Canada's affidavit, since, as noted above, new trial motions were mentioned in Mr. Canada's presence at least twice on the last day of trial during discussion of the bond revocation motion. Trial Tr. vol. XIV, 74, 76, June 13, 2001. However, the comments about new trial motions were not directed to Mr. Canada. Moreover, there was no discussion of the legal proposition that the verdict was against the weight of the evidence.

It is obvious to the Court that counsel's failure to file the motion was not a strategic choice; it was based on ignorance of the law. Mr. Canada's affidavit states that he "was not familiar with F.R. Crim. Pro. 33" at the time of the verdict. Mot. to Vacate, Canada Aff. at ¶ 4. The government's citation to parts of the record where the Court mentioned a motion for a new trial while speaking to the attorneys of the petitioner's co-defendants does not provide a reason to dismiss this testimony. A decision based on a misunderstanding of the law is not a strategic decision. *See Dando v. Yukins*,

-17-

461 F.3d 791, 799 (6th Cir. 2006); *United States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996); *Cox v. Donnelly*, 432 F.3d 388, 390 (2d Cir. 2005). The failure was "not a reasonable strategic decision entitled to deference." *Moss v. Hoffbauer*, 286 F.3d 851, 865 (6th Cir. 2002).

Nor was counsel's failure to file the motion objectively reasonable, even when viewing Mr. Canada's performance "on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented." *Ouber*, 293 F.3d at 25. After the petitioner's conviction, Mr. Canada continued to represent him. Once a criminal defendant has been convicted by a jury, there were limited options available to challenge the conviction. One of those ways is through a Rule 33 motion. Mr. Canada was required to conduct a reasonable investigation and make a professional judgment as to the best course of action. *Wiggins*, 539 U.S. 510, 521 (2003) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (quoting *Strickland*, 466 U.S. at 690-91)). The petitioner's trial counsel in this case failed to do so, and his failure to file the Rule 33 motion was unreasonable. "There was nothing to lose and something to gain, though only in a probabilistic sense, from making the argument." *Rezin*, 322 F.3d at 446. The Court concludes, therefore, that trial counsel's failure to file a motion for a new trial amounted to constitutionally deficient performance.

ii. Prejudice

The government insists that even if Mr. Canada's ignorance of Rule 33 is irrelevant because the petitioner incurred no prejudice as a result of Mr. Canada's failure to file the motion, since the motion should not have been granted, in the government's view.

At the time of the petitioner's trial in 2001, Federal Rule of Criminal Procedure 33 read as follows:

Rule 33.  New Trial
On a defendant's motion, the court may grant a new trial to that defendant if the
interests of justice so require.  If trial was by the court without a jury, the court may
– on defendant's motion for new trial – vacate the judgment, take additional
testimony, and direct the entry of a new judgment.  A motion for new trial based on
newly discovered evidence may be made only within three years after the verdict or
finding of guilty.  But if an appeal is pending, the court may grant the motion only
on remand of the case.  A motion for a new trial based on any other grounds may be
made only within 7 days after the verdict or finding of guilty or within such further
time as the court may fix during the 7-day period.

Fed. R. Crim. P. 33 (2001).  "The decision whether to grant a new trial is left to the sound discretion

of the district court."  *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). "A reversal based

on the verdict being against the manifest weight of the evidence is proper when the government has

presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of

conflicting evidence."  *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).  "A district judge,

in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may

act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence."

*United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (quoting *Lutz*, 154 F.3d at 589).  As

another judge of this court explained,

A Motion for Acquittal and a Motion for New Trial based on the ground that the
verdict is against the great weight of the evidence are governed by very different
standards. The Motion for New Trial involves a much broader standard of review
than a Motion for Acquittal. A verdict may well be against the great weight of the
evidence, but, nevertheless, be substantial enough to permit reasonable jurors to draw
an inference of guilt. In a Motion for New Trial, the trial judge can consider the
credibility of the witnesses and the weight of the evidence to insure that there is not
a miscarriage of justice. It has often been said that he/she sits as a thirteenth juror.

Nevertheless, granting a Fed. R. Crim. P. 33 Motion for New Trial attacking the
weight of the evidence is a discretionary matter. The Court should exercise such
discretion only in the extraordinary circumstances where the evidence preponderates
heavily against the verdict.

-19-

*United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979) (citing 2 C. Wright & A. Miller, Federal Practice and Procedure § 553, at 487 & n. 31), *aff'd*, 633 F.2d 219 (6th Cir. 1980). "*Turner* does, indeed, disclose the appropriate standard for *district courts* to follow in ruling on motions for new trials based on the verdict's being against the great weight of the evidence." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).

The government cites a number of cases from other circuits stating that the credibility of witnesses is to be decided by the jury except in exceptional circumstances, *United States v. Kuzniar*, 881 F.2d 466, 470-71 (7th Cir. 1989) ("In general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial."); *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) ("It long has been our rule that trial courts 'must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses."); *United States v. Polin*, 824 F. Supp. 542, 551 (E.D. Pa. 1993) ("I could not simply substitute my own judgment for that of the jury without seriously undermining the integrity of our trial system."), and stating that "motions for new trials based on the weight of the evidence are not favored," *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). One Sixth Circuit case does state that "[m]otions for a new trial are not favored and are granted only with great caution." *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976). However, *Garner* involved a motion based on newly discovered evidence and cited *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967), which states that "[m]otions for a new trial *on newly discovered evidence* are not favored and should be granted only with great caution." (Emphasis added.) A different standard applies in Rule 33 motions based on newly discovered evidence. *See United States v. Blackwell*, 459 F.3d 739, 768-69 (6th Cir. 2006).

The Court concludes that the present case represents one those extraordinary matters in which a motion for a new trial would have been appropriately considered and granted.  It is true that the Court denied a motion under Rule 29, finding that the evidence was sufficient to convict; but that does not prevent a new trial in those cases where "the judge disagrees with the jury's resolution of conflicting evidence."  *Lutz*, 154 F.3d at 589.  That is exactly what happened here.  As the Court noted in its decision denying the Rule 29 motion,

> The Court harbored grave doubt about the validity of the conviction of Rex Robinson because the evidence of his involvement in the Indiana operation came largely from Frances Robinson, Rex's former sister-in-law, whose testimony the Court views as highly suspect and likely false; the evidence connecting Rex Robinson to the Michigan operation is weak; and the likelihood of the existence of two separate conspiracies – one in Michigan and one in Indiana at an earlier time – is quite strong.  However, after considering the transcript of proceedings carefully for an inordinately lengthy time, and applying the indulgent standard that must be employed when reviewing a criminal jury verdict, the Court concludes that the trial evidence is sufficient to support the verdict.

Opinion on Mot. to Vacate, 99-20011 (Aug. 30, 2004).  The Court believes that "the evidence lack[ed] that degree of persuasiveness without which there should be no conviction."  *Bain v. United States*, 262 F. 664, 666 (6th Cir. 1920).  This case involves "the extraordinary circumstances where the evidence preponderates heavily against the verdict."  *Turner*, 490 F. Supp. at 593 (approved of by *Ashworth*, 836 F.2d at 266).

Because the motion for a new trial would have been granted if made, counsel's deficient performance in failing to file such a motion resulted in prejudice to the petitioner.  The Court finds that the petitioner has satisfied *Strickland*'s two-pronged test and has established a constitutional violation entitling him to a vacation of his sentence under 28 U.S.C. § 2255.

### B.  Failure to challenge sufficiency of evidence of drug quantity

-21-

The petitioner's second claim is that his trial attorney was ineffective by failing to challenge the sufficiency of the evidence regarding the quantity of drugs the jury found he conspired to manufacture. The prosecution did not present any evidence that the petitioner was actively involved in the Michigan growing operations, had observed the active operations in Michigan, or knew the extent of the Michigan operation. The jury's finding that the petitioner conspired to manufacture or distribute more than 1000 plants or kilograms, the petitioner believes, is against the weight of the evidence, and the petitioner's trial attorney should have made that argument.

The government states the petitioner cannot show that his attorneys (different ones at trial and on appeal) were both ineffective for failing to raise this issue. The government catalogs the evidence presented at trial and concludes that the record shows Rex Robinson was a participant in a major manufacturing and distributing conspiracy that spanned multiple states from 1991 to 1998, which is sufficient to allow the jury to infer that Rex Robinson was responsible for 1000 or more plants or kilograms of marijuana.

The petitioner replies that without any evidence that he came to Michigan in 1995, a finding that he was responsible for 1000 plants or kilograms of marijuana is against the great weight of the evidence. He reasons that even if there was only a single conspiracy, the individual responsibility of each member of the conspiracy must be shown. However, the petitioner continues to dispute that the evidence shows that he was involved in one large conspiracy involving both Michigan and Indiana, and he suggests that the court of appeals' decision involving the petitioner's co-defendants held only that the evidence viewed in the light most favorable to the government was sufficient to establish one conspiracy in both states involving those co-defendants.

### i. Performance

This issue presents a closer question since the attorney did, in fact, file a motion challenging the sufficiency of the evidence. However, the Court concludes that trial counsel was also ineffective for his failure to challenge the sufficiency of the evidence of the drug quantity attributable to the petitioner. Again, it does not appear that it could have been a strategic decision to challenge guilt but not the amount for which the petitioner was to be held accountable. The statutory mandatory minimum sentence in this case was tied directly to the amount of drugs charged. By arguing that there was insufficient evidence that the petitioner was responsible for over 1000 kilograms or plants, trial counsel, if successful, could have reduced the petitioner's sentence exposure by half. *See* 21 U.S.C. §§ 841(b)(1)(A)(vii), (b)(1)(B)(vii). "It is not suggested that [the petitioner's] lawyer had a tactical reason not to make the argument . . .; he could not have, since he had no other basis for knocking five years off his client's sentence." *Rezin*, 322 F.3d at 446.

On direct appeal, the Sixth Circuit took note of the oddity of counsel's omission:

> In denying the Criminal Rule 29 motion, the district court did not address the possible issue that the jury finding that Rex Robinson's involvement in the marijuana conspiracy exceeded 1,000 plants and 1,000 kilograms of marijuana was not supported by the evidence. The district court acted properly as the issue was not raised in the Criminal Rule 29 motion. On appeal, Rex Robinson's replacement counsel attempted to argue that the Criminal Rule 29 motion challenged the jury finding which required the mandatory minimum sentence of 120 months. The Criminal Rule 29 motion stated in part that "there was absolutely no evidence which established that Rex Robinson *had entered into an agreement to distribute more than 1000 kilograms of marijuana or had entered into an agreement to manufacture more than 1000 plants, as charged in the indictment*." (emphasis added). JA 57. That challenge questioned the issue of guilt but did not raise the sentencing issue as to whether there was sufficient evidence to support the jury's separate finding as to Rex Robinson. The appeal in this case does not raise that issue.

*United States v. Robinson*, 161 F. App'x 541, 543, n.4 (6th Cir. January 4, 2006). The Court agrees that counsel's failure precluded consideration of a viable issue – potentially beneficial to the

-23-

petitioner – in post-judgment proceedings and on direct appeal.  The failure to raise that issue amounted to deficient performance under *Strickland*.

### ii.  Prejudice

The petitioner was also likely prejudiced by this failure, as the Court probably would have granted relief on the basis of this argument.  The testimony suggests that Rex Robinson was involved in marijuana crimes in 1991, 1992, and 1993.  If Frances Robinson is to be believed, the evidence indicated that the petitioner grew marijuana in the closet of a house trailer in 1991, in a bedroom in 1992, and in a bedroom and a basement room in 1993.  Trial Tr. vol. VI, 31, 36, 46-48, May 23, 2001.  Furthermore, the testimony showed that Rex Robinson and Chad Robinson discussed Rex moving to the Sullivan, Indiana farm to take care of the plants.  No evidence was presented about the number of plants that Rex was involved in growing there.

Of course, "[a] defendant found guilty of conspiracy is accountable for all quantities of drugs for which he was directly involved, and all reasonably foreseeable quantities."  *United States v. Caver*, 470 F.3d 220, 246-47 (6th Cir. 2006); *see also United States v. Robinson*, 547 F.3d 632, 639-40 (6th Cir. 2008) (holding that a defendant must be found to have participated in a conspiracy to be held accountable for the drug quantities attributed to the conspiracy as a whole); *United States v. Gill*, 348 F.3d 147, 152 -153 (6th Cir. 2003) (holding that "the key factor in determining the quantity of drugs for which an individual conspirator will be held accountable at sentencing is foreseeability" (citing *United States v. Page*, 232 F.3d 536, 541-42 (6th Cir. 2000)).  However, absent proof connecting Rex Robinson to the Michigan operation, this evidence is entirely insufficient to support a finding that Rex was involved in growing over 1000 kilograms or plants of marijuana, or that those quantities were foreseeable to him.  The failure to raise that issue in a mid-

or post-trial motion, therefore, caused the petitioner prejudice and resulted in a violation of his Sixth Amendment right to the assistance of competent counsel.

### III.  Conclusion

The Court concludes that the petitioner's trial counsel's failure to file a motion for a new trial and to challenge the sufficiency of the drug quantity evidence amounted to deficient performance that prejudiced the petitioner.  Therefore, he has established an error of constitutional magnitude warranting relief under 28 U.S.C. § 2255.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence [dkt #564] is **GRANTED**.

It is further **ORDERED** that the petitioner's sentence and judgment of sentence [dkt #473] are **VACATED**.

It is further **ORDERED** that the petitioner is granted a new trial.

It is further **ORDERED** that the order setting unsecured bond with conditions [dkt #23] and the petitioner's bond [dkt #24] are **REINSTATED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 22, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 22, 2009.

s/Lisa M. Ware
LISA M. WARE